STATE OF CONNECTICUT *v.* HERBERT A. GROSS
(12638)

O'CONNELL, HEIMAN and FREEDMAN, Js.

Argued June 10—decision released August 23, 1994

*M. Donald Cardwell,* for the appellant (defendant).

*Jack W. Fischer,* assistant state's attorney, with whom, on the brief, were *Patricia Swords,* state's attor-

ney, *Susan M. Naide,* assistant state's attorney, and *Matthew Gedansky,* deputy assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a) (1).[1] The defendant was acquitted on a second count of the information that charged him with a violation of General Statutes § 14-227a (a) (2).[2] On appeal, the defendant claims that the trial court improperly (1) subjected him to double jeopardy, and (2) violated his right to due process of law by admitting into evidence the results of blood alcohol tests when he did not request that they be admitted into evidence pursuant to General Statutes § 14-227a (d).[3] We affirm the judgment of the trial court.

[1] General Statutes § 14-227a (a) provides in pertinent part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both . . . ."

[2] General Statutes § 14-227a (a) provides in pertinent part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property . . . (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

[3] General Statutes § 14-227a (d) provides: "In any prosecution for a violation of subdivision (1) of subsection (a) of this section, reliable evidence

The jury could reasonably have found the following facts. At 11:28 p.m. on February 20, 1992, the Vernon police received a telephone complaint about a vehicle located at 13 Ridgewood Drive in Vernon with an intoxicated occupant passed out in the driver's seat. Officer Daniel Champagne of the Vernon police department responded to the complaint. When Champagne arrived at the scene, he discovered a 1979 El Camino with the engine running and a person seated in the driver's seat with his head resting against the window of the driver's side door. There were no other occupants in the vehicle.

The vehicle was resting with its right front tire over the curb of the road and on the lawn of 13 Ridgewood Drive. The remaining three wheels were on the roadway. The headlights were on and the engine was running. The driver appeared to be unconscious.

Champagne went to the passenger side front door of the vehicle, opened it and entered the vehicle. Once inside the vehicle, he placed the gear shift into the park position and shut off the engine. He noticed a heavy odor of alcohol in the vehicle. He exited the vehicle and went to the driver's side of the vehicle where he opened the driver's side door and attempted to rouse the occupant. He shined his flashlight on the occupant and shook him. He noted a strong odor of alcohol on the occupant's breath.

The occupant of the vehicle responded and Champagne asked him to exit the vehicle. The occupant responded by looking around and saying, "where are my friends, where are my friends." The person exited the vehicle, placed his feet on the ground and held on to the vehicle to maintain his balance. Champagne

respecting the amount of alcohol or drugs in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defendant's blood, breath or urine, otherwise admissible under subsection (c) of this section, shall be admissible only at the request of the defendant."

guided him to the rear of the vehicle. The occupant of the vehicle was identified as the defendant, Herbert A. Gross.

The officer continued to note a strong odor of alcohol coming from the defendant's breath and also noted that his eyes were red and glassy. The defendant was unable to walk to the rear of the vehicle without holding onto the vehicle for support. Champagne asked the defendant to perform field sobriety tests at the scene. The defendant was unable to recite the alphabet correctly to completion and was unable to name accurately the months of the year sequentially from January to December. Further, the defendant performed unsatisfactorily on the finger to nose test, the standing on one leg test and the walk and turn test. Additionally, the result of the defendant's horizontal gaze nystagmus test was consistent with the reaction of a person under the influence of intoxicating liquor or drugs. On the basis of all these factors, Champagne placed the defendant under arrest for operating a motor vehicle while under the influence of intoxicating liquor or drugs or both and transported him to the Vernon police station.

At the police station, the entire processing of the defendant, including the rendition of the breath tests, was videotaped. The defendant again performed the field sobriety tests, but this time on camera. The horizontal gaze nystagmus test was not redone. While the defendant's performance improved in the second series of tests, the defendant became more agitated, belligerent and used profanity. After being advised of the implied consent statute and the consequences of a refusal to agree to testing, the defendant submitted to a breath test. The test was administered on an Intoximeter 3000 machine. The first test was administered at 12:12 a.m. and resulted in a reading of 0.186 of one

percent. The second test was administered thirty-five minutes later, and resulted in a reading of 0.139 of one percent.

The jury found the defendant guilty of the offense of operating a motor vehicle while under the influence of intoxicating liquor or drugs or both, but not guilty of operating a motor vehicle while having a blood alcohol content in excess of 0.10 of one percent. This appeal followed.

I

The defendant first asserts that charging him with one count of violating § 14-227a (a) (1) and another count of violating § 14-227a (a) (2) constituted a violation of the double jeopardy prohibition under the fifth amendment to the United States constitution.[4] We are unpersuaded.

The constitutional guarantee against double jeopardy prohibits multiple trials for the same offense as well as multiple punishments for the same offense in a single trial; *State* v. *Woodson,* 227 Conn. 1, 7, 629 A.2d 386 (1993); and is applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); *State* v. *Woodson,* supra, 7.

In the context of multiple trials, the double jeopardy provision of the fifth amendment is designed to "protect against a second prosecution for the same offense after acquittal [and] against a second prosecution after conviction . . . ." *State* v. *Haskins,* 188 Conn. 432, 472, 450 A.2d 828 (1982). Here, the defendant does not claim that he has been subjected to multiple punishments for the same crime, so we are not concerned with

---

[4] The fifth amendment to the United States constitution provides in pertinent part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ."

the kind of analysis mandated by *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), where we are called on to determine whether two offenses constitute the same offense for double jeopardy purposes when the claim arises out of an assertion that the person is being twice punished for the same crime. *State* v. *Nita,* 27 Conn. App. 103, 114–15, 604 A.2d 1322, cert. denied, 222 Conn. 903, 606 A.2d 1329, cert. denied, U.S. , 113 S. Ct. 133, 121 L. Ed. 2d 80 (1992). Thus, the double jeopardy claim is grounded on the assertion that prosecution for alternative methods of committing a crime in the same information, but in separate counts, constitutes a violation of the double jeopardy clause, even where the individual is acquitted of one of the alternative methods of committing the crime. We are unpersuaded.

The trial of the defendant did not result in a second prosecution for the same offense after acquittal nor did it result in a second prosecution after conviction. *State* v. *Haskins,* supra, 188 Conn. 472. The constitutional right to be free from double jeopardy " 'is a guarantee against being twice put to *trial* for the same offense.' " (Emphasis in original.) *In re Juvenile Appeal (85-AB),* 195 Conn. 303, 308, 488 A.2d 788 (1985), quoting *Abney* v. *United States,* 431 U.S. 651, 661, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977). Additionally, the defendant makes no claim of multiplicity of punishment. Thus, the defendant's double jeopardy rights were in no way implicated and his claim to the contrary is without merit.

## II

The defendant next asserts that the trial court improperly admitted into evidence the results of the blood alcohol tests when the defendant did not expressly request that they be admitted into evidence

pursuant to § 14-227a (d).[5] The defendant concedes that he did not object to the admission of the test results at trial, but asserts that he did raise the issue in his posttrial motion for a new trial. An examination of the record discloses that such a claim was not made in the motion that sought a new trial. The only ground asserted in the postverdict motion for a new trial was the claim of double jeopardy. As an alternative, however, the defendant asserts that this is an issue of constitutional magnitude and that he is entitled to review under the doctrine of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). We conclude that this claim is not entitled to *Golding* review.

"[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id., 239–40. We are free, however, to respond to the defendant's claim by focusing on whichever condition is most relevant under the circumstances of the case. We conclude that the defendant cannot satisfy the second prong of *Golding*, since he has failed to demonstrate that his claim alleges the violation of a fundamental constitutional right. "Robing garden variety claims of [an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature." *State* v. *Reddick*, 33 Conn. App. 311, 331–32, 635 A.2d 848 (1993), cert.

[5] See footnote 3.

denied, 228 Conn. 924, 638 A.2d 38 (1994); *State* v. *Ulen,* 31 Conn. App. 20, 37, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993). Evidentiary claims are not of constitutional magnitude and are thus not entitled to *Golding* review. See *State* v. *Robinson,* 227 Conn. 711, 741 n.22, 631 A.2d 288 (1993).

We also note that, while we are ordinarily loathe to characterize the method by which review is sought, in this instance we are constrained to characterize the attempt to seek *Golding* review of this unpreserved claim as an inadequately preserved claim for *Golding* review. While in the course of his discussion the defendant makes passing reference to "due process," he makes no attempt to provide us with any rationale for his claim that this represents more than an unpreserved evidentiary claim. Thus, we decline to afford this claim *Golding* review.

The judgment is affirmed.

In this opinion the other judges concurred.