## STATE OF CONNECTICUT *v.* JOHN HANSEN
### (13002)

Dupont, C. J., and Foti and Heiman, Js.

---

Argued June 5—decision released September 19, 1995

*Neal Cone,* special public defender, for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, was *Patricia A. Swords,* state's attorney, for the appellee (state).

*Shelley A. White* filed a brief for New Haven Legal Assistance Association, Inc., as amicus curiae.

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes

§ 53a-134 (a) (4)[1] and larceny in the sixth degree in violation of General Statutes § 53a-125b.[2] On appeal, the defendant claims that (1) he was deprived of his right to a fair trial when evidence was introduced that he was suspected of committing other robberies in the Vernon area, had a prior arrest record, and had a habit of concealing himself behind a locked door to avoid police, (2) he was denied his rights to equal protection and due process when the state argued that his poverty provided a possible motive for committing the crimes, (3) the trial court failed to make an adequate inquiry into the defendant's complaints concerning trial counsel and denied his application for the appointment of substitute counsel, (4) the evidence was insufficient to support a guilty verdict on the charge of robbery in the first degree, (5) the charge of the court on the issue of the presumption of innocence, the burden of proof, and the jury's duties denied the defendant due process of law, and (6) the defendant's conviction of both robbery in the first degree and larceny in the sixth degree violated his right against double jeopardy.

The jury could reasonably have found the following facts. At about 2:30 a.m. on January 16, 1993, the victim, Christie Lawrence, was working as an assistant manager at the Mile Hill Sunoco, a twenty-four hour mini-mart in Vernon. She was behind the counter when the defendant entered the store. The defendant walked to the back of the store and removed a soda from the cooler. He then brought the soda to the counter where

[1] General Statutes § 53a-134 (a) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

[2] General Statutes § 53a-125b (a) provides: "A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is two hundred fifty dollars or less."

the victim was standing and asked the victim for a carton of Marlboro cigarettes. The victim obtained the carton of cigarettes without turning her back on the defendant and proceeded to ring up the defendant's purchases. When the victim informed the defendant of the amount he owed for his purchases, the defendant replied that he was not going to pay. The defendant then demanded that the victim give him money. The victim refused and pleaded with the defendant not to "do this to [her]."

At this time, a customer, Eric Marandino, entered the store and made a purchase. The defendant stood aside while the victim rang up the sale. The victim was unable to say anything to Marandino about what was occurring because she was afraid.

Once Marandino left the store, the defendant again asked the victim for the money. When the victim refused, the defendant reached into his pocket and pulled out what appeared to the victim to be a knife. As the defendant returned the object to his pocket, he told the victim that he also had a gun and again demanded the money. The victim opened the drawer of the cash register and removed the money. At the defendant's command, the victim placed the money into a bag and handed it to the defendant. The defendant fled the store carrying the money and the carton of cigarettes.

Shortly thereafter, the police responded to the victim's 911 call. The victim was able to provide the police with a description of the defendant. One day after the incident, the victim went to the Vernon police station where she was shown a photographic array that included a photograph of the defendant. The victim identified the defendant as the person who had robbed the convenience store on January 16, 1993. The same photographic array was shown to Marandino who also

identified the defendant as the person that he had seen standing by the register on the night of the robbery.

I

The defendant first asserts that he was deprived of his right to a fair trial when evidence was introduced that he was suspected of committing other robberies in the Vernon area, had a prior arrest record, and had a habit of concealing himself behind a locked door when police came to arrest him. We are unpersuaded.

In support of his claim, the defendant points to three portions of the direct testimony of Detective Donald Skewes of the Vernon police department who had been assigned to investigate the robbery at the Mile Hill Sunoco on January 16, 1993.[3]

In the first portion of Skewes' testimony, the state asked Skewes how he created the photographic array that was used to identify the defendant as the robber. Skewes testified that he put together a photographic array of possible suspects from the description given by the victim. He further testified that a photograph of the defendant was included because the defendant met the description given by the victim and because he was suspected of committing past robberies in the Vernon area. The defendant made no objection to Skewes' com-

---

[3] The defendant also asserts that his own counsel compounded the unfairness when on cross-examination he asked questions that fleshed out the police belief that the defendant was suspected in several other robberies in the Vernon area. We decline to afford review of this portion of the claim because it implicates a claim of ineffective assistance of counsel. Our Supreme Court has consistently emphasized " 'that a claim of ineffective assistance of counsel is more properly pursued on a petition for a new trial or on a petition for a writ of habeas corpus rather than on direct appeal.' " *State* v. *Leecan*, 198 Conn. 517, 541, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); see also *State* v. *Walker*, 215 Conn. 1, 9, 574 A.2d 188 (1990). Nothing in the claim made here requires that we abandon this preference for orderly process. Thus, we decline to review on direct appeal that part of this claim that more properly turns on effective assistance of counsel.

ment that the defendant was a suspect in other robberies, nor did he move to strike the answer.

Second, the defendant points to a later portion of Skewes' direct testimony where the state asked Skewes to describe to the jury the circumstances surrounding the execution of the arrest warrant on the defendant. Skewes testified that he had information that the defendant was in a garage on Cherry Street, but that when the police arrived the defendant fled into 29 Brooklyn Street where members of his family reside. Skewes then testified that they were allowed access into the house and were told that the defendant was upstairs. When they reached the top of the stairs, the door was locked. Skewes then testified that it was a "habit" of the defendant's to hide behind locked doors to avoid the police. The defendant again neither objected nor moved to strike the testimony.

Finally, the defendant points to Skewes' continued testimony regarding the photographs that were taken of the defendant after his arrest. Skewes testified that these photographs were taken to record the defendant's current facial features because the photograph used in the photographic array was from past arrests. The defendant did not object to Skewes' testimony regarding the defendant's past arrests, nor did he move to strike.

The defendant concedes that he failed to object to any of the answers that he now claims as the predicate for his failure to receive a fair trial. The defendant also failed to move to strike any of the answers that he now claims to be offensive, and did not seek a curative instruction from the trial court. Thus, he claims entitlement to review of this unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), or under the plain error doctrine. Practice Book § 4185.

No useful purpose is served by again setting forth the familiar litany of the criteria that must be met for *Golding* review. *State* v. *Golding*, supra, 213 Conn. 239–40. "The first two conditions of *Golding* are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State* v. *Walker*, 33 Conn. App. 763, 769, 638 A.2d 1084, cert. denied, 229 Conn. 913, 642 A.2d 1249 (1994); see also *State* v. *Crosby*, 34 Conn. App. 261, 264, 641 A.2d 406, cert. denied, 230 Conn. 903, 644 A.2d 916 (1994). We conclude that, here, the defendant's evidentiary claim is not of constitutional magnitude and decline to afford review.

It is well established that "[r]obing garden variety claims of [an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature. *State* v. *Reddick*, 33 Conn. App. 311, 331–32, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994); *State* v. *Ulen*, 31 Conn. App. 20, 37, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993). Evidentiary claims are not of constitutional magnitude and are thus not entitled to *Golding* review. See *State* v. *Robinson*, 227 Conn. 711, 741 n.22, 631 A.2d 288 (1993)." (Internal quotation marks omitted.) *State* v. *Gross*, 35 Conn. App. 631, 637–38, 646 A.2d 933, cert. denied, 231 Conn. 932, 649 A.2d 254 (1994). Thus, the defendant's claim regarding the admission of evidence concerning his past contacts with the police does not warrant *Golding* review.

The defendant does not fare any better under his claim for review pursuant to the plain error doctrine. "Practice Book § 4185 provides that this court may in the interests of justice notice plain error not brought to the attention of the trial court. Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the

judicial proceedings." (Internal quotation marks omitted.) *State* v. *Foreshaw*, 214 Conn. 540, 546, 572 A.2d 1006 (1990). Having concluded that the testimony of which the defendant now belatedly complains did not implicate his constitutional rights so as to warrant review under *State* v. *Golding*, supra, 213 Conn. 239–40, we find that the testimony did not result in manifest injustice, and does not, therefore, warrant plain error review. See *State* v. *Ulen*, supra, 31 Conn. App. 38.

The defendant's claim is without merit.

## II

The defendant next asserts that he was denied his rights to equal protection and due process when the state argued that his poverty provided a possible motive for committing the crimes.[4] He also claims that the harm created by the state's argument was compounded by the trial court's charge to the jury that evidence of motive was relevant and material to its consideration of the defendant's guilt or innocence. We are unpersuaded.

Certain additional facts are necessary to an understanding of our resolution of this issue. In his defense, the defendant called his brother and sister-in-law, Jeffrey Hansen and Donna Hansen, to offer explanations as to why the defendant could not have been the perpetrator of this robbery. Jeffrey Hansen testified that on the night of the robbery the defendant came to his house and asked if he could stay for the night and that he and the defendant spent the next day fixing Donna Hansen's car. Jeffrey Hansen further testified that the defendant did not have any money at that time because he was unemployed and that he provided the defendant with food and cigarettes. He concluded that, if the defendant did have money at that time, the defendant

---

[4] Upon application by the New Haven Legal Assistance Association, Inc., we permitted the filing of an amicus brief relating to this issue.

would have been out drinking. Donna Hansen also testified that the defendant did not have any money at the time and that, if he did have money, he would have been out using the money to purchase alcohol.

In the state's initial closing argument to the jury, no reference was made to the defendant's lack of money. In the defendant's argument to the jury, however, counsel argued that the defendant's lack of funds made it less likely that he committed the robbery. Counsel pointed out that the witnesses to the robbery described the perpetrator as wearing a gray sweatshirt and that when the defendant was arrested he was wearing a blue sweatshirt. Counsel then stated that the defendant's brother and sister-in-law testified that the defendant did not have much money and could not, therefore, have bought sweatshirts in different colors. Counsel further argued that Jeffrey Hansen and Donna Hansen testified that the defendant stayed at their house on the night of the robbery and spent the next day working with Jeffrey on Donna's car and that if the defendant had any money he would instead have been out drinking. In summation, counsel again returned to the theme that the defendant was wrongly accused, arguing that the defendant would have no reason to rob a store at that time of night because no package stores or bars were open from which he could buy alcohol.

In rebuttal, the state argued that the defendant had a motive for committing the crimes: "He had no money, he was unemployed, he smoked Marlboro cigarettes." The defendant raised no objection to the argument made by the state's attorney in rebuttal, nor did he request a curative instruction by the trial court.

In its charge, the trial court instructed the jury that the arguments and statements made by counsel were not evidence and that the jury's recollection of the facts controlled. In addition, the trial court informed the jury

that evidence tending to establish a motive for the commission of the crimes was relevant to determining the defendant's guilt or innocence. The trial court added that the state was not, however, required to prove that there was a motive because motive is not an element of the crimes charged.[5] The defendant took no exception to the trial court's instructions.

## A

The defendant now asserts, for the first time on appeal, that the argument of the prosecutor in the rebuttal argument[6] constituted a denial of his right to equal protection.[7] We are unpersuaded.

---

[5] In its charge, the trial court instructed the jury with respect to motive as follows: "Whenever a person is on trial for a criminal offense, it is proper to show whether that person possessed any motive to commit the offense. The state does not, however, have to prove motive, since evidence of motive does not establish any element of the offense charged. However, such evidence is both relevant and material, and it may have a tendency to strengthen the state's case when an adequate motive can be shown.

"Evidence tending to show the existence or nonexistence of motive may be a relevant factor in the inquiry as to the guilt or innocence of the defendant. This factor is to be weighed by you [along] with all the other evidence in the case. The role that motive plays in any particular case necessarily varies with the strength of the other evidence in the case. The other evidence may be such as to justify a finding of guilty without any motive being shown. On the other hand, it may also be so weak without a disclosed motive, the guilt of the defendant could not [be] established beyond a reasonable doubt. It is up to you, as judges of the facts, to decide whether the defendant possessed any motive to commit the offense, and to give it such weight as you think it is entitled, under the circumstances."

[6] We note that although the defendant also points to the trial court's instruction to the jury on motive, he makes no claim on appeal that the charge was legally incorrect or improper. He claims only that the harm of the state's attorney's comment was compounded by the trial court's charge.

[7] The defendant claims that the actions of the state's attorney violated his right to equal protection under both the state and federal constitutions. See U.S. Const., amend. XIV, § 1; Conn. Const., art. I, §§ 1 and 20. The defendant has failed, however, to provide us with an independent analysis of his state law claim. In the absence of such analysis, we decline to review that claim and limit our analysis to the federal constitution. See *State* v. *Robinson*, 227 Conn. 711, 721, 631 A.2d 288 (1993); *State* v. *Pinnock*, 220 Conn. 765, 776 n.3, 601 A.2d 521 (1992).

The defendant concedes that this issue was not properly preserved in the trial court for review by this court, and we agree. Thus, he again seeks review under the rubric of *State* v. *Golding,* supra, 213 Conn. 233, or, in the alternative, the plain error doctrine. Practice Book § 4185.

We conclude that the defendant has failed to satisfy entitlement to review under the second prong of *Golding,* that "the claim is of constitutional magnitude alleging the violation of a fundamental right." *State* v. *Golding,* supra, 213 Conn. 239–40. The bulk of the evidence of the defendant's impecuniosity was elicited by the defendant himself. His brother and sister-in-law were called by the defense and testified that the defendant was without funds and that when the defendant did have money he would use it to go out drinking. On cross-examination, the defendant's brother testified that the defendant was unemployed. In addition, the defendant attempted to use this evidence to his advantage in closing arguments to establish that if he had committed the robbery, he would have been out using the money to buy liquor rather than working with his brother on his sister-in-law's car. In rebuttal, the state merely suggested an alternate inference to be drawn from the defendant's lack of funds.[8] Nor is the claimed error so egregious or obvious as to warrant plain error review. See Practice Book § 4185.

The defendant's claim is without merit.

## B

The defendant also asserts that the state's attorney's argument denied him due process of law. We decline

---

[8] We note that the defendant's claim is not directed at the admission of the evidence, but is directed instead to the propriety of the arguments of the prosecutor. The cases cited by the defendant in his brief are cited only for the proposition that such evidence may be inadmissible. The defendant has not cited to a case that addresses the situation here, where evidence

to review this unpreserved claim of prosecutorial misconduct.

"We will not afford *Golding* review to [unpreserved] claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial. . . . *State* v. *Williams*, 231 Conn. 235, 246, 645 A.2d 999 (1994), quoting *State* v. *Young*, 29 Conn. App. 754, 766–67, 618 A.2d 65 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287 (1993)." (Internal quotation marks omitted.) *State* v. *Ricketts*, 37 Conn. App. 749, 762, 659 A.2d 188 (1995).

In determining whether a prosecutor's conduct was so egregious as to deny a defendant a fair trial, we note that some leeway must be afforded to the advocates in offering arguments to the jury in final argument. "[I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Internal quotation marks omitted.) *State* v. *Haggood*, 36 Conn. App. 753, 772, 653 A.2d 216 (1995), quoting *State* v. *Williams*, supra, 231 Conn. 247. "[W]e must review the comments complained of in the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 246–47, quoting *State* v. *Robinson*, supra, 227 Conn. 746.

The argument by the state's attorney was not so egregious as to deprive the defendant of a fair trial, but merely offered to the jury an alternate inference from the one suggested by defense counsel that could be drawn from the defendant's lack of funds. In addition,

---

of the defendant's finances was produced by the defendant himself and later used by the state in its closing argument.

even if we were to agree that the remark of the state's attorney in her closing argument was improper, we would still be required to decline review of this unpreserved claim because the statement was an isolated and brief incident that did not constitute a pattern of conduct repeated throughout the trial. See *State* v. *Ricketts*, supra, 37 Conn. App. 762. Such an isolated and responsive argument as now attacked by the defendant fails to implicate the defendant's constitutional right to due process and we decline to review this claim.[9]

Our determination that the prosecutor's comments were not so egregious as to warrant *Golding* review also precludes review under the plain error doctrine. Practice Book § 4185.

### III

The defendant next asserts that the trial court improperly (1) failed to make an adequate inquiry into the defendant's complaints about his court-appointed counsel and (2) denied his request for substitute counsel.[10] We disagree.

---

[9] We also note that even if we were to afford review of this claim the result would not change. In determining whether prosecutorial misconduct was so serious as to amount to a due process violation, some of the factors that we examine are the extent to which the misconduct was invited by defense argument, the severity of the misconduct, the centrality of the misconduct to the critical issue, and the strength of the state's case. *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987); *State* v. *Harvey*, 27 Conn. App. 171, 181, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992). Here, the entirety of the argument by the state was invited by the defense evidence and argument, the alleged misconduct was not severe and not pervasive, it was not connected to the critical issue in the case and, finally, the evidence of the guilt of the defendant was overwhelming in light of the fact that two eyewitnesses identified the defendant as the perpetrator.

[10] We note that the factual bases for the defendant's claims are predicated on the perceived ineffective assistance of his trial counsel. We decline to review that portion of the defendant's claims that implicate the competency of counsel because such claims are more properly raised on habeas. See *State* v. *Walker*, 215 Conn. 1, 9, 574 A.2d 188 (1990); *State* v. *Leecan*, 198 Conn. 517, 541, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); see also footnote 3.

Certain additional facts are necessary to an understanding of our resolution of this issue. On January 27, 1993, the trial court appointed Lawrence Bates as special public defender to represent the defendant. In response to this appointment, the defendant informed the court that he was not satisfied with Bates and that he wanted the opportunity to choose a special public defender. The trial court indicated that it would not permit the defendant to choose and that the appointment of Bates would stand.

On May 13, 1993, the state informed the trial court that a pretrial had been unsuccessful in resolving the case and that the case should be placed on the firm jury list because the defendant had filed a motion for a speedy trial.[11] The defendant requested permission to address the court and advised the court that he desired a change of counsel because he was not satisfied with the representation that he was receiving from Bates. The defendant stated that he felt that Bates had not done enough to represent him and that he was concerned that Bates thought he was guilty. The trial court denied the defendant's motion, stating that the defendant's reasons for requesting new counsel were not sufficient.

On May 18, 1993, prior to the commencement of the trial, the defendant again requested that Bates be replaced as counsel. He stated that Bates had not prepared a defense and that he would prefer to be represented by the legal clinic at the University of Connecticut. The trial court informed the defendant that it was Bates' job to handle his defense in a professional manner and that there was nothing to indicate that Bates would not do so. In addition, the trial court assured the defendant that it would intervene if any problems were to develop during the course of the trial. The trial court did, however, give the defendant an

---

[11] See General Statutes § 54-82m and Practice Book § 965A et seq.

opportunity to contact the legal clinic, which declined to represent the defendant.

On May 26, 1993, the day that the evidence commenced, the defendant again requested that Bates be relieved as his counsel and that new counsel be appointed. The defendant repeated his claims that Bates had shown him no defense, had not filed any motions in his behalf and that he did not feel he would get justice with this counsel. He also stated that he was in the process of preparing a grievance against Bates.

After a meeting with counsel, the trial court again denied the defendant's request to relieve Bates as counsel and to appoint substitute counsel. The trial court advised the defendant that he was entitled to adequate and effective counsel but that he was not entitled to pick his own counsel. The trial court went on to state that it was his understanding that Bates had been in the case for about three months and that he had had an adequate opportunity to prepare the case. In addition, the trial court told the defendant that not every case had a defense other than an assertion that this particular defendant did not commit the crime. The trial court then concluded that Bates was able to provide the defendant with an adequate defense and that the case would go forward as scheduled.

A

The defendant first claims that the trial court failed to make an adequate inquiry into his complaints about his court-appointed counsel. We disagree.

Our Supreme Court has held that a trial court has "a responsibility to inquire into and to evaluate carefully all substantial complaints concerning court-appointed counsel . . . ." *State* v. *Robinson,* supra, 227 Conn. 726; see also *State* v. *Gonzalez,* 205 Conn. 673, 685, 535 A.2d 345 (1987). "The extent of an inquiry into a

complaint concerning defense counsel lies within the discretion of the trial court." *State* v. *Robinson*, supra, 725. A trial court does not abuse its discretion by failing to make further inquiry where the defendant has already had an adequate opportunity to inform the trial court of his complaints. Id., 726; *State* v. *High*, 12 Conn. App. 685, 689, 533 A.2d 1217 (1987).

Here, the defendant was given numerous opportunities to clearly place upon the record his claim for disqualification of his court-appointed counsel. The trial court, having been fully informed as to the nature of the complaints, did not improperly fail to make a further inquiry into the defendant's claims. The defendant's complaints were fully articulated in the course of each of the arguments. The defendant's renewed objections to his representation by appointed counsel were not different or any more substantial than his original complaints. The defendant's claim that the trial court improperly failed to make adequate inquiry into his complaints is, therefore, without merit. See *State* v. *Gonzalez*, supra, 205 Conn. 683–85.

B

We next turn to the claim that the trial court improperly denied the defendant's motions for the court to remove Bates as counsel and to appoint new counsel.

A request by a criminal defendant that his appointed counsel be discharged and new counsel be appointed may be granted only if it is supported by a substantial reason. Id., 683; *State* v. *Lee*, 32 Conn. App. 84, 100, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993), cert. denied, 510 U.S. 1202, 114 S. Ct. 1319, 127 L. Ed. 2d 668 (1994). "While a criminal defendant's right to be represented by counsel implies a degree of freedom to be represented by counsel of defendant's choice . . . this guarantee does not grant a defendant an unlimited opportunity to obtain alternate counsel on

the eve of trial." (Internal quotation marks omitted.) *State* v. *Lee*, supra, 101; see also *State* v. *Gonzalez*, supra, 683. The resolution of the question as to whether the circumstances of the case warrant the appointment of new counsel is one addressed to the exercise of the discretion of the trial court. *State* v. *Gonzalez*, supra, 683; *State* v. *Watson*, 198 Conn. 598, 610, 504 A.2d 497 (1986); *State* v. *Lee*, supra, 100.

Applying this standard to the record before us, we conclude that the trial court did not abuse its discretion in denying the defendant's motion to discharge his counsel and for the appointment of substitute counsel. It appears that the primary complaint that the defendant asserted against counsel was that counsel did not believe the defendant not guilty and had not discussed a defense with him. It is clear that the position of the defendant was that he had not committed the crime, while the state was in a position to offer the evidence of the victim who had already identified the defendant as the perpetrator from a photographic array, and a witness who had already identified the defendant as being present in the store when he came in to purchase eggs. Furthermore, the defendant acknowledged that he had been made aware of these facts by counsel.

The defendant has failed to show that the trial court abused its discretion in refusing to replace counsel.

IV

The defendant next asserts that the evidence produced by the state was insufficient to support his conviction of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[12] In support of this

___

[12] The information filed against the defendant charged him with robbery in the first degree in violation of subdivision (3) or (4) of General Statutes § 53a-134 (a). The jury was, therefore, instructed on the requirements of both subdivisions. The jury returned a verdict of guilty under § 53a-134 (a) (4) only.

claim, the defendant asserts that the state was obligated to prove that the defendant actually possessed a firearm at the time of the robbery. We are not persuaded.

Before reaching the merits of the defendant's claim, we note that the defendant has conceded that the claim was not preserved for appellate review. Although the defendant did file a postverdict motion for judgment of acquittal, that motion addressed only a claim that he could not be convicted without proof of an explicit threat. The defendant does, however, request review of this unpreserved claim under *State* v. *Golding*, supra, 213 Conn. 233. We conclude, however, that the defendant's alleged constitutional violation does not clearly exist and did not clearly deprive him of a fair trial. See id., 239–40. The defendant's claim must, therefore, fail.

Pursuant to § 53a-134 (a) (4), a person is guilty of robbery in the first degree when, in the commission of the crime of robbery, that person "displays or threatens the use of what he represents by his words or actions to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." This portion of the statute is satisfied when the state has proven beyond a reasonable doubt that the defendant represented by his words or conduct that he has a firearm; the state need not prove that the defendant actually had a gun. *State* v. *Dolphin*, 195 Conn. 444, 449, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985); *State* v. *Hawthorne*, 175 Conn. 569, 573, 402 A.2d 759 (1978).

The defendant appears to claim support for his position because of the language found in General Statutes § 53a-135.[13] He argues that because a violation of § 53a-

---

[13] General Statutes § 53a-135 (a) provides in pertinent part: "A person is guilty of robbery in the second degree when he commits robbery as defined in section 53a-133 and . . . (2) in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument."

135 (a) (2), is a lesser included offense of § 53a-134 (a) (4), it is clear that the legislature intended that the greater offense require proof of the presence of an actual firearm. This interpretation of the two statutes has already been rejected by our Supreme Court. *State v. Evans*, 200 Conn. 350, 511 A.2d 1006 (1986). In *Evans*, the court stated that "[u]pon examination of General Statutes §§ 53a-134 (a) (4) and 53a-135 (a) (2) . . . we find that there is a significant difference between the two statutes. . . . [I]t is clear that the essential difference between §§ 53a-134 (a) (4) and 53a-135 (a) (2) is the type of weapon used. The former is limited to firearms; the latter includes firearms but is not limited to them. . . . This difference indicates a clear legislative intent to impose a greater penal sanction where robbery is committed with the representation of the use of a firearm." (Citations omitted; internal quotation marks omitted.) Id., 359.

The state was not, therefore, required to prove that the defendant possessed an actual firearm in order to convict him of a violation of General Statutes § 53a-134 (a) (4). The state's burden was satisfied when it proved beyond a reasonable doubt that the defendant threatened the use of what he represented to be a firearm.

The defendant's claim is without merit.

## V

The defendant next claims that the trial court's instructions on the state's burden of proof, the presumption of innocence, and the jury's duties deprived him of due process of law. Specifically, the defendant challenges the following statements made by the trial court in its charge: (1) "A reasonable doubt is a doubt for which a valid reason can be assigned." (2) "A reasonable doubt is not a doubt . . . suggested by the ingenuity of counsel or any of the jurors, which is not justified by the evidence or the lack of evidence." (3) "A reasonable

doubt is . . . is a real doubt, an honest doubt." (4) "[I]f all of the evidence and the reasonable and logical inference is drawn there is equally two ways, one toward innocence and one toward guilt, you must give it the direction which tends towards innocence." (5) "If you can, in reason, reconcile all of the facts proved with any reasonable theory consistent with innocence of the accused, then you cannot find the defendant guilty . . . . If the facts you find proven or the evidence you deem credible is consistent with or may be reasonably explained by any hypothesis other than [that] the accused is guilty, you must return a verdict in favor of the accused." (6) "The state of Connecticut and its people look to you as sworn officers of this court . . . with the interest placed in your hands as an arm of the court." and (7) "[T]he law is made to protect society and innocent persons, and not to protect guilty ones."[14] We disagree.

The defendant took no exception to any of the instruction now challenged on appeal and the defendant's claim is not properly preserved for our review. The defendant, therefore, seeks review under *State* v. *Golding*, supra, 213 Conn. 233. All of the language now challenged has been found not to implicate a defendant's constitutional rights and fails to meet the second prong of *Golding*. We, therefore, decline to review the defendant's claim.

The defendant's first challenge is to the trial court's instruction that "a reasonable doubt is a doubt for which a valid reason can be assigned." This charge has consistently withstood claims of constitutional impropriety and, therefore, does not warrant *Golding* review. *State* v. *Brown*, 35 Conn. App. 699, 708–709, 647 A.2d 17, cert.

---

[14] The defendant concedes that he is "[t]reading familiar ground" in raising this claim on appeal and states that the issue is raised "if no more than to preserve the issue for federal review."

denied, 231 Conn. 932, 649 A.2d 254 (1994); *State* v. *Smith*, 35 Conn. App. 51, 71–72, 644 A.2d 923 (1994); *State* v. *Johnson*, 29 Conn. App. 584, 590, 617 A.2d 174 (1992), appeal dismissed, 228 Conn. 59, 634 A.2d 293 (1993); see also *State* v. *Kelley*, 229 Conn. 557, 567–68, 643 A.2d 854 (1994).

The defendant's second challenge is to the trial court's instruction that a reasonable doubt is not a "doubt . . . suggested by the ingenuity of counsel or any of the jurors, which is not justified by the evidence or lack of evidence." Again, this charge has been held not to represent a claim of constitutional dimension and is thus not entitled to *Golding* review. *State* v. *Smith*, supra, 35 Conn. App. 71–72; see also *State* v. *Jeffrey*, 220 Conn. 698, 719, 601 A.2d 993 (1991), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992); *State* v. *Boykin*, 27 Conn. App. 558, 572, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992).

The defendant's third challenge is to the trial court's instruction that a reasonable doubt is a "real doubt, an honest doubt." This language has been held to not have reduced in any way the state's obligation to prove the guilt of the accused beyond a reasonable doubt and thus is not entitled to *Golding* review. *State* v. *Smith*, 26 Conn. App. 279, 282, 600 A.2d 1036 (1991), citing *State* v. *Thomas*, 214 Conn. 118, 120, 570 A.2d 1123 (1990); see also *State* v. *Findlay*, 198 Conn. 328, 346, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986).

The defendant's fourth challenge is to the trial court's charge with respect to the so called "two inference rule," which instructs the jury that if all of the evidence and the reasonable and logical inferences drawn therefrom point equally to guilt and innocence, the jury must find the defendant innocent. The defendant asserts that the result of this is to suggest that a preponderance of

the evidence standard is implicated. Our review of the jury charge, however, discloses that the trial court on numerous occasions properly instructed the jury that the burden of proof rested with the state to prove the defendant guilty beyond a reasonable doubt and explained those terms fully and accurately. In addition, this charge has been previously upheld against constitutional attack and, thus, the defendant is not entitled to review of this unpreserved claim pursuant to *State* v. *Golding,* supra, 213 Conn. 233. See *State* v. *Smith,* 219 Conn. 160, 167, 592 A.2d 382 (1991); *State* v. *Dyson,* 217 Conn. 498, 504, 586 A.2d 610 (1991).

The defendant's fifth challenge concerns language in the trial court's charge that he claims imposed an obligation on the defendant to offer a defense so that jurors would be able to "legitimize their votes." The language used by the trial court, however, has consistently withstood constitutional attack and we will not review the defendant's unpreserved claim. See *State* v. *Findlay,* supra, 198 Conn. 348; *State* v. *Lopez,* 37 Conn. App. 509, 513–15, 657 A.2d 647 (1995).

The defendant's final two attacks on the trial court's charge concern the statements that the jurors are "sworn officers of this court" and "an arm of the court" and that "the law is made to protect society and innocent persons, and not to protect guilty ones." Again, these charges have withstood constitutional challenge and the defendant cannot satisfy the second *Golding* prong. *State* v. *Colon,* 37 Conn. App. 635, 639, 657 A.2d 247 (1995); see also *State* v. *Francis,* 228 Conn. 118, 133–36, 635 A.2d 762 (1993).

Finally, the defendant asserts that even if no single incident in the charge warrants a reversal of his conviction, the cumulative effect of all of these alleged improprieties deprived him of due process of law. This argument has been squarely rejected in *State* v. *Rob-*

*inson*, supra, 227 Conn. 746–47. Thus, again the defendant cannot meet the threshold demand of the second prong of *Golding*.

We note, however, that even if we were to afford review of these seven attacks on the jury instructions, the defendant could not prevail. "When examining a jury charge, we do not engage in a microscopic examination of the charge, dissecting it line by line, nor do we consider the challenged portions of the charge in isolation. *State* v. *Fleming*, 198 Conn. 255, 268, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986). We read the instructions as a whole to determine whether a reasonable possibility that the jury was misled by the charge exists. *State* v. *Castonguay*, 218 Conn. 486, 498, 590 A.2d 901 (1991); *State* v. *Dixon*, 28 Conn. App. 444, 447, 611 A.2d 432 (1992); *State* v. *Fernandez*, 27 Conn. App. 73, 84–87, 604 A.2d 1308, cert. denied, 222 Conn. 904, 606 A.2d 1330 (1992)." *State* v. *Andrews*, 29 Conn. App. 533, 540, 616 A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993). Applying that test, the charge as a whole was fair, just and adequate to the task of leading the jury to a fair and reasoned result.

## VI

Finally, the defendant asserts that his constitutional guarantee against double jeopardy has been violated by his conviction and sentencing for both a robbery in the first degree and larceny in the sixth degree.[15]

We note that the defendant's claim is raised for the first time on appeal and is not, therefore, properly preserved for our review. The state has conceded, however, and we agree, that larceny in the sixth degree is a lesser

---

[15] The defendant was sentenced to eighteen years on the charge of robbery in the first degree and three months on the charge of larceny in the sixth degree. The defendant's sentences were ordered to run concurrently for a total effective sentence of eighteen years.

included offense of robbery in the first degree; see *State* v. *Tinsley*, 181 Conn. 388, 396–97, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981); and that the conviction of both offenses constitutes double jeopardy.

The defendant has thus been subjected to double jeopardy by virtue of the fact that multiple punishments have been imposed for the same offense. See *State* v. *Chicano*, 216 Conn. 699, 721–22, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991). The remedy for such a violation is to combine the conviction for larceny in the sixth degree with the conviction for robbery in the first degree and to vacate the larceny in the sixth degree sentence. Id., 725.

The judgment is reversed only as to the sentence on the conviction of larceny in the sixth degree and the case is remanded with direction to combine the defendant's larceny conviction with his robbery in the first degree conviction and to vacate his larceny in the sixth degree sentence.

In this opinion the other judges concurred.