# STATE OF CONNECTICUT *v.* STEVEN CORREIA
## (12840)

DUPONT, C. J., FOTI and FREEDMAN, Js.

Argued October 29, 1993—decision released January 25, 1994

*Francis T. Mandanici,* assistant public defender, for the appellant (defendant).

*Mary H. Lesser,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Mary E. Baran,* assistant state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a), two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) and (B), and robbery in the first degree in violation of General Statutes § 53a-134 (a) (4). The defendant claims that (1) the trial court improperly (a) refused to give a jury instruction as required by *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), and (b) refused to admit as an exhibit a prior inconsistent statement under *State* v. *Whelan,* supra; (2) the trial court improperly required the defendant to sit at the defense table and to submit to a one-on-one identification in front of the jury; and (3) the trial court improperly denied the defendant's motion for a mistrial after the state indirectly commented on the defendant's failure to testify in its closing argument. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On November 16, 1981, the victim and her roommate went to the Agora Ballroom in New Haven. They left the bar around 1:30 a.m. and walked to the victim's car located in a nearby parking lot. The victim unlocked the car, got into the driver's seat and unlocked the passenger door. When the roommate got into the front passenger seat, she saw a man with a gun bending down at the driver's window. She said, "Oh my God." The victim turned and saw the defendant pointing a

gun at her. The victim offered the defendant money and her car. The defendant responded, "Shut up and let me in." The victim unlocked a rear door and let him in the car. The defendant continued to point the gun at the victim. When the victim looked into the rearview mirror, the defendant told her to look straight ahead and drive. At the defendant's direction, the victim drove a few blocks, and was then told to stop the car. The defendant told the victim and her roommate to get out of the car, he told the victim to open the trunk, and then ordered the roommate to get in. The defendant then locked her in the trunk.

The victim and the defendant got back into the car, the victim in the driver's seat and the defendant in the passenger seat. All the while, the defendant kept the gun pointed at the victim. The defendant demanded her money. The victim told him she had only $5 and that her roommate did not have any money. The victim gave the defendant her $5. The defendant then directed her to continue driving. After she drove a few blocks, he told her to stop and get out of the car. The defendant took her by the arm, with the gun still pointed at her, and led her to a large field. The defendant ordered the victim to remove her jacket and to lay it on the ground. He ordered the victim to remove her clothes and forced her to perform oral sex on him, and then ordered her to lie down. The defendant penetrated the victim vaginally. During the vaginal penetration, the defendant supported himself on his right elbow while he continued to point the gun, held in his right hand, at the victim. The assault lasted between fifteen and twenty minutes. After the assault, the defendant told the victim to get dressed. When she picked up her jacket, her car keys fell to the ground. The defendant and the victim tried unsuccessfully to find the keys. They went to the car to get a flashlight, returned to the field, found the car keys and walked back to the car.

When they returned to the car, the defendant told the victim to let her roommate out of the trunk. After the roommate was released from the trunk, all three got into the car. The defendant was in the backseat with the gun pointed at the victim. The victim drove until the defendant told her to stop the car. He asked the women for their addresses and phone numbers. They wrote them down and the defendant compared them with their driver's licenses and checkbooks. The defendant ordered the victim to get out of the car. He led her down the street a short distance and threatened her with harm if she went to the police.

The victim returned to the car and the defendant continued down the street. The victim told her roommate that the defendant had raped her and drove to Saint Raphael Hospital. The roommate told the emergency room staff that the victim had just been raped. The victim was examined and the police were called. Both women gave statements to the police. The next morning the victim looked through numerous photographs but was unable to identify anyone.

In 1986, five years later, the victim was contacted by Sergeant Michael Sweeney of the New Haven police department who told her he had some photographs he wanted to show her. Sweeney showed the victim an array of photographs. The victim immediately identified the defendant as the man who had kidnapped and raped her.

At trial, in 1992, the jury convicted the defendant on all counts charged. This appeal followed.

I

The defendant first claims that the trial court improperly refused to give a jury instruction as required by *State* v. *Whelan,* supra, and refused to admit, as an exhibit, a prior inconsistent statement under *Whelan.* We disagree.

The following facts are pertinent to the disposition of this claim. On the night of the sexual assault, the victim gave a written and signed statement to the police. In this statement, she told the police that her assailant had hidden his face most of the time and her only description of outstanding facial features was that she thought he might have a long chin. At trial, the victim testified that she had ample opportunities to observe the defendant, and that she would never forget his face. The defendant offered the statement given to the police on the night of the sexual assault as a prior inconsistent statement offered for its truth. Portions of the statement that the defendant claimed constituted prior inconsistent statements were read to the jury, the victim testified with regard to the statement, and the defendant extensively cross-examined the victim with regard to the statement. The trial court, however, refused to instruct the jury that the victim's statement to the police on the night of her sexual assault could be taken for its truth and refused to admit the written statement as an exhibit.

## A

The defendant claims that the trial court improperly refused to instruct the jury that the statement to the police could be taken for its truth. To support his claim, the defendant relies on *State* v. *Whelan,* supra. *Whelan* sets forth the rule that a prior inconsistent statement should be admitted to prove the truth of the matter asserted, provided the statement is in writing, signed by a declarant who has personal knowledge of the facts stated, and the declarant testifies at trial and is subject to cross-examination. Id. The trial court found that the victim's statement to the police on the night of the sexual assault met the criteria set forth in *Whelan.*

We must, therefore, determine whether *Whelan* requires the trial court to instruct the jury that such prior inconsistent statements may be taken for their truth. The defendant relies on *State* v. *Tatum,* 219 Conn. 721, 595 A.2d 322 (1991), and *State* v. *Graham,* 21 Conn. App. 688, 575 A.2d 1057, cert. denied, 216 Conn. 805, 577 A.2d 1063 (1990), for the assertion that such a jury instruction is required. These cases, however, involve jury instructions that specifically instructed the jury that a prior inconsistent statement could not be used for its truth but only to impeach the witness. That is not the situation here. Here, the trial court instructed the jury to make its decision by considering "all of the testimony and exhibits received into evidence. . . . The evidence is the sworn testimony both on direct and cross-examination, the exhibits which have been received into evidence and anything that the lawyers agreed on." The victim's prior inconsistent statements were a part of that testimony to be considered as evidence. Absent a limiting instruction, evidence presented at trial is taken for its truth. See C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 3.5.1; 1 C. McCormick, Evidence (4th Ed. 1992) § 54, and cases cited therein. Here, unlike in *State* v. *Tatum,* supra, and in *State* v. *Graham,* supra, because there was no limiting instruction made, the jury was free to take the prior inconsistent statements made by the victim as true.

The trial court did instruct the jury on credibility of witnesses. In that portion of the charge, the trial court included as one of six criteria to consider in determining a witness' credibility, an instruction that the jury may consider the consistency of a witness' testimony. This, however, is not the same as a charge that the victim's prior inconsistent statement may be used for impeachment purposes only. Absent a limiting instruction, the jury was free to take the victim's prior incon-

sistent statement as true. We hold that an affirmative instruction that such prior inconsistent statements may be taken for their truth, while being a correct statement of the law, is not mandatory under *State* v. *Whelan,* supra.

## B

The defendant next claims that the trial court improperly refused to admit the prior inconsistent written statement as an exhibit.

"When a witness admits making the statement, additional documentary evidence of inconsistency might be deemed to have been merely cumulative. *State* v. *McDowell,* 179 Conn. 121, 127, 425 A.2d 935 (1979)." *State* v. *Graham,* supra, 704; see also *G & R Tire Distributors, Inc.* v. *Allstate Ins. Co.,* 177 Conn. 58, 61, 411 A.2d 31 (1979). Here, the witness victim admitted making the statement to the police. Defense counsel read the relevant portions of the statement to the jury several times and the trial court also permitted defense counsel to argue the statement's truth to the jury. Therefore, the portions of the statement that the defendant claimed consisted of prior inconsistent statements were before the jury and the witness' credibility had been called into question. Any further evidence of the inconsistency would have been cumulative. "The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. *State* v. *Boles,* [223 Conn. 535, 549, 613 A.2d 770 (1992)]." (Internal quotation marks omitted.) *State* v. *Colton,* 227 Conn. 231, 258, 630 A.2d 577 (1993). Viewing the testimony of the victim in its entirety, we conclude that the trial court did not abuse its discretion in refusing to admit the victim's written statement to the police as a full exhibit.

## II

The defendant next claims that the trial court improperly required the defendant to sit at the defense table and to submit to a one-on-one identification in front of the jury. We disagree.

The following facts are necessary for the disposition of this claim. Prior to trial, the defendant filed a motion to suppress the out-of-court identification of a photograph of the defendant made by the witness in 1986. After the hearing on the motion to suppress, the defendant conceded that there was no evidence of suggestive procedures and, thus, that the out-of-court identification was admissible. The defendant also conceded that the out-of-court identification could not be claimed to have tainted any in-court identification. The defendant was not present at this suppression hearing.

The defendant then moved to suppress any in-court identification on the ground that such identification would lack probative value because of the eleven year time period since the date of the sexual assault. The defendant also expressed concern over the inherent suggestiveness of any in-court identification. The trial court denied the motion. The defendant then requested a waiver of his presence at trial. This request was denied.

The defendant asserts that the in-court identification of the defendant violated the defendant's right to due process. Our Supreme Court has addressed the question of in-court identifications on a number of occasions. While it is true that in-court identifications are inherently suggestive, they are not impermissible. *State* v. *Tatum,* supra, 729. The United States Supreme Court has not established guidelines for in-court identification procedures. *State*

v. *Smith,* 200 Conn. 465, 469, 512 A.2d 189 (1986), citing *United States* v. *Domina,* 784 F.2d 1361, 1368 (9th Cir. 1986). Nor has it "indicated that in-court identifications must be made in a way that is not suggestive. *United States* v. *Domina,* [supra]." *State* v. *Smith,* supra. Additionally, where an out-of-court identification is not unconstitutional, a subsequent in-court identification need not be excluded. Id. "[T]he manner in which in-court identifications are conducted is not of constitutional magnitude but rests within the sound discretion of the trial court. . . . In such cases, the defendant's protection against the obvious suggestiveness in any courtroom identification confrontation is his right to cross-examination . . . or other practical procedures designed to lessen the degree of suggestiveness. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Reddick,* 224 Conn. 445, 470, 619 A.2d 453 (1993).

In *State* v. *Reddick,* supra, the defendant contested the in-court identification procedure as impermissibly suggestive because, as here, the defendant was the only black man in the courtroom. There, our Supreme Court concluded that, because the defendant had not requested any less suggestive in-court identification procedures, the court could not "characterize the trial court's denial of the motion to waive the defendant's presence as an abuse of discretion." Id., 471. Here, as in *Reddick,* the defendant did not request any less suggestive in-court identification procedure.[1] In light of the fact that the defendant did not

---

[1] Our review of the transcript reveals that defense counsel did not request an in-court lineup but claimed that the burden is on the state to request such an in-court lineup if the state wants to make an in-court identification.

"[Defense Counsel]: The court is familiar with the Practice Book section where the state can move for a lineup. There's a specific Practice Book section and that's what the state should do if they want an in-court identification. They should move for some type of lineup. So, I am trying to waive the presence of my client. If that is denied, then I'm saying that the

request any less suggestive in-court identification procedures, we conclude that the trial court properly denied the defendant's motion to waive his presence at trial and allowed the in-court identification.

## III

The defendant's final claim is that the trial court improperly denied the defendant's motion for a mistrial after the state, in its closing argument, indirectly commented on the defendant's failure to testify. We disagree.

The following facts are pertinent to the disposition of this claim. The state, at the end of its closing argument, argued to the jury, "And I would ask you as you go over the evidence carefully. Think about what [the victim] said, her demeanor, your observations of her. And as you do, say the evidence proves that [the defendant] is guilty. [The defendant] should not be allowed in the courtroom to twist the evidence and distort the evidence because the evidence proves that he was guilty . . . ." At this point, the defendant asked to be heard outside the presence of the jury. The trial judge said, "One moment." The state then briefly concluded its closing argument. The trial judge immediately

only circumstance by which he should be allowed in court for any identification is if the state conducts a lineup here in court.

"The Court: Okay. Your request for waiver of his presence is denied. Your request for lineup is denied.

"[Defense Counsel]: I'm not—I know *Tatum* gets into that. I want to be clear. And I disagree with *Tatum*. They sort of suggest that perhaps the defense should move for the lineup. I think the—but it's an evidence thing. It's somewhat dicta. I think the burden is on the state; that if they want an in-court identification, the burden should be on the state to move for a lineup and let the state conduct the lineup, because I basically don't have the facilities. I don't have the power to bring in people. I don't have subpoena powers to bring in—fill a courtroom up of people.

"The Court: You do not want to initiate a procedure that is going to be beneficial in the identification of your client.

"[Defense Counsel]: Many people consider that a tactical decision but I think the burden should be on the state."

addressed the jury stating, "In anticipation of one thing that [defense counsel] may ask me to say to you, and I'm going to make my remarks to you about both closing arguments. [The assistant state's attorney] just mentioned that [the defendant] may have tried to twist the testimony. His lawyer conducted cross-examination. [The defendant] didn't try to twist anything. He did not testify in this case. He doesn't try to twist anything. So, I should correct you on that." The defendant then objected to the state's closing argument.

Later, in the charge to the jury, the trial court stated, "[The defendant] has not testified here. And I've told you a number of times and you all agreed, and we've gone over this, that a defendant does not have to testify. And you all agreed it was a good idea, much better than when a person has to prove their innocence. And I don't think that [the assistant state's attorney] was trying to highlight the fact that a person did not testify. What she was calling attention to was the fact that on cross-examination these people were vigorously cross-examined, the witnesses for the state. There's nothing wrong with that. There is nothing wrong with that. That's what lawyers do. I've told you that. And that's not [the defendant's] trying to twist anything. That's [defense counsel's] trying to defend his client to the best of his ability. There's nothing wrong with that."

The defendant contends that the argument by the state was an indirect comment on the defendant's failure to testify. It is well established that the state may not directly or indirectly comment on the defendant's failure to testify. *Griffin* v. *California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). "The ultimate test of whether a prosecution argument indirectly and impermissibly comments on the defendant's failure to testify is whether, because of its language and context, the jury would naturally and necessarily interpret it

as comment on the defendant's failure to testify. . . .
A significant factor in applying this test is whether the
argument calls for information or explanations which
only the defendant could be expected to supply." (Citations omitted.) *State* v. *Allen,* 9 Conn. App. 169, 179,
517 A.2d 1043 (1986), rev'd on other grounds, 205
Conn. 370, 533 A.2d 559 (1987).

Here, the state's comment that the defendant was
trying to twist the evidence is not one that the jury
would "naturally and necessarily" have interpreted as
a comment on the defendant's failure to testify. It does
not call for any information or explanations that only
the defendant could be expected to supply. The statement did not call for any information at all; it is merely
a comment on the defendant's case. We conclude,
therefore, that the trial court properly denied the
defendant's motion for a mistrial.

The judgment of the trial court is affirmed.

In this opinion the other judges concurred.