## STATE OF CONNECTICUT *v.* TONY CARSWELL
## (12688)

O'CONNELL, HEIMAN and SPEAR, Js.

Argued September 30—decision released December 13, 1994

*Roy S. Ward,* special public defender, with whom, on the brief, was *Philip Russell,* special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *David I. Cohen,* senior assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of criminal attempt to commit murder in violation of General Statutes §§ 53a-54a (a)[1] and 53a-49.[2] The defendant was also charged with the crime of assault in the first degree in violation of General Statutes § 53a-59. The trial court instructed the jury not to consider the count of assault unless it found the defendant not guilty of criminal attempt to commit murder. On appeal, the defendant asserts that the trial court improperly (1) refused to suppress the victim's out-of-court identification of the defendant, (2) permitted the victim's in-court identification of the defendant despite a constitutionally tainted out-of-court identification, and (3) permitted the prosecution to bolster the out-of-court identification of the defendant.[3] We disagree and affirm the judgment of the trial court.

[1] General Statutes § 53a-54a provides in pertinent part: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 53a-49 provides in pertinent part: "CRIMINAL ATTEMPT . . . . (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] The defendant also claimed that the trial court improperly failed to charge the jury that it could draw an adverse inference from the failure of the state to call Sergeant Thomas Mattera of the Norwalk police depart-

The jury could have reasonably found the following facts. On July 19, 1991, the victim, Arthur Rambert, and four friends left New York on a Metro-North train. They planned to meet friends for a "blind date" at Carlton Court, a housing project in Norwalk. At about 2 a.m., the victim and his friends arrived at Carlton Court, but their dates were not waiting at the appointed place.

The five men then went to the apartment of a person with whom the victim had stayed on prior visits to Carlton Court. She was not home, however, and the men decided to return to New York on the earliest train that morning. They waited at Carlton Court before going to the railroad station.

While the men were waiting, the victim observed a young man riding a bicycle. The victim had met him on a prior visit to Carlton Court and asked permission to take a ride on the bike. He mounted the bike and rode toward the area of building number two, where he observed the defendant talking to some women. The victim rode past the defendant and then turned around intending to return to his friends. As he passed the defendant, the victim heard a gunshot and turned around. He observed that the defendant had discharged a weapon.

The defendant then called to the victim, telling him that he wanted to talk with him. The victim waited and the defendant walked toward him. The area was well lighted by streetlights, and the victim realized that he had met the defendant previously at Carlton Court and knew him as Tyree. As the defendant approached to within inches, the victim asked the defendant what kind of gun he had. The defendant responded that he had

ment as a witness pursuant to *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960). This claim was expressly withdrawn by the defendant at the time of oral argument and, consequently, will not be considered.

a .44 magnum and then shot the victim twice in the hip, causing him to fall off the bicycle. The defendant then stood directly over the victim, and fired three more shots, hitting the victim once in the leg, once in the stomach, and once in the chest. As he fired the third, fourth and fifth shots at the victim, the defendant said, "You all people from New York City got to get out of here." The defendant then ran inside building two.

The police and an ambulance crew were summoned and arrived at the scene five or six minutes after the shooting. When questioned by the police, the victim stated that the defendant appeared to be between five foot nine inches and six feet in height, "real slim," and was wearing a black hooded sweatshirt and black sweatpants. He described the defendant's hair as shaved on the sides and cut flat on top with the sides black and the top dyed blond. The victim also informed the police that the individual who had shot him was named Tyree.

On July 22, 1991, while recuperating at Norwalk Hospital, the victim picked a photograph of the defendant from a police photo array as the person who had shot him. In addition, at trial, the victim identified the defendant as his assailant.

I

The defendant first asserts that the trial court improperly denied his motion to suppress the victim's out-of-court identification of the defendant. The defendant posits that the array of photographs presented to the victim at Norwalk Hospital was unnecessarily suggestive and in violation of his right to due process. We are unpersuaded.

The following additional facts are necessary for a proper resolution of this issue. Detective Nelson Alicea of the Norwalk police department was assigned to

investigate the shooting at Carlton Court. On the basis of his investigation, Alicea learned that the suspected assailant was known by the name of Tyree. Alicea knew the defendant as Tyree and developed a photographic array that included the defendant's picture. The photographic array was comprised of eight black and white photographs of different individuals, including the defendant, placed in a folder fashioned in such a way as to permit the viewer to see all eight photographs at the same time. Because the Norwalk police department did not have a photograph of the defendant, all of the photographs in the array were obtained from the Bridgeport police in the interests of consistency.

On July 22, 1991, Alicea and Sergeant Thomas Mattera went to Norwalk Hospital to question the victim. Alicea informed the victim that they had a possible suspect and wanted the victim to examine a group of photographs to see if the person that had committed the offense was in the group. Neither Alicea nor Mattera insisted that the victim choose one of the pictures, nor did they suggest to the victim which picture to choose. Within seconds, the victim identified the photograph of the defendant as that of the person who had shot him. Alicea asked the victim to sign the photograph that he had identified as that of his assailant. The victim complied with the request.

The defendant moved to suppress the victim's out-of-court identification as unnecessarily suggestive. After a full evidentiary hearing, the trial court denied the defendant's motion to suppress the out-of-court identification. We agree with the determination of the trial court.

"The due process clause of the fourteenth amendment to the United States constitution requires the exclusion of identification evidence . . . when the identification procedure used was so impermissibly sug-

gestive as to give rise to a very substantial likelihood of an irreparable misidentification." (Internal quotation marks omitted.) *State* v. *Biggs,* 13 Conn. App. 12, 17, 534 A.2d 1217 (1987), cert. denied, 207 Conn. 801, 540 A.2d 73 (1988), citing *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *State* v. *Anderson,* 178 Conn. 287, 291, 422 A.2d 323 (1979); see also *State* v. *Fields,* 31 Conn. App. 312, 320, 624 A.2d 1165, cert. denied, 226 Conn. 916, 628 A.2d 989 (1993).

"It is well settled that [i]n determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive, and second, if it is found to be so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances." (Internal quotation marks omitted.) *State* v. *Monteeth,* 208 Conn. 202, 206, 544 A.2d 1199 (1988); see also *State* v. *Gant,* 231 Conn. 43, 70, 646 A.2d 835 (1994); *State* v. *Arena,* 33 Conn. App. 468, 474, 636 A.2d 398, cert. granted on other grounds, 229 Conn. 918, 644 A.2d 914 (1994).

It is the burden of a defendant who moves to suppress identification evidence to establish that the identification resulted from the use of an unconstitutional procedure by the authorities. *State* v. *Payne,* 219 Conn. 93, 106, 591 A.2d 1246 (1991); *State* v. *King,* 35 Conn. App. 781, 786, 647 A.2d 25 (1994). Our review of the record leads us to conclude that the defendant failed to meet his burden and that the trial court acted properly in denying the motion to suppress.

"The presentation of an array of several photographs to witnesses, including that of the suspect, does not constitute an impermissibly suggestive pretrial identifica-

tion procedure in the absence of any unfairness or other impropriety in the conduct of the exhibit. . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *White,* 229 Conn. 125, 162, 640 A.2d 572 (1994). The trial court, therefore, had sufficient evidence before it to support its finding that the procedures employed by the police were not impermissibly suggestive.

"There was no evidence from any [witness] that the array was a stacked deck with the defendant being one giant among a group of Lilliputians. . . . There [was] no evidence that the police in any way suggested to the [witness] which person [he] should identify. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Biggs,* supra, 13 Conn. App. 19. The eight photographs had a common origin that made them consistent in appearance and they were placed in a folder in such manner as to make them all visible at once. Nothing in the evidence before the trial court supports a finding that the out-of-court identification by the victim was in any way tainted by any form of impermissible suggestion or direction.

The defendant, therefore, failed to meet his initial burden of establishing that the out-of-court identification resulted from some impermissibly suggestive identification procedure on the part of the police. Because we have concluded that the out-of-court identification was not tainted by any impermissibly suggestive conduct on the part of the authorities, we need not address the issue of reliability under the totality of the circumstances. *State* v. *Gant,* supra, 231 Conn. 43.

The trial court's denial of the defendant's motion to suppress was proper.

## II

The defendant next claims that the trial court improperly permitted the victim's in-court identification of the

defendant. The defendant posits that the in-court identification was unreliable and tainted by the claimed constitutionally impermissible out-of-court identification. Because we have concluded, however, that the out-of-court identification procedure was not constitutionally impermissible, we need not address this claim. *State v. Correia,* 33 Conn. App. 457, 465, 636 A.2d 860, cert. denied, 229 Conn. 911, 642 A.2d 1208 (1994).

## III

The defendant next asserts that the trial court improperly permitted the state to bolster the victim's out-of-court identification of the defendant by permitting Alicea to testify that the victim selected the defendant's photograph from the array presented to him at the hospital.

The defendant concedes, as he must, that this claim was not preserved at trial because no objection was interposed to the question that permitted the officer to testify as to the selection of the defendant's photograph by the victim. The defendant posits, however, that he is entitled to a review of this claim pursuant to the doctrine of *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). In support of his claim for *Golding* review, the defendant asserts that Alicea's testimony deprived him of his fundamental constitutional right to a fair trial. We are unpersuaded.

"[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In

the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant to the particular circumstances." (Emphasis in original.) Id.

We note that the defendant has failed to provide us with an analysis to support his bare assertion that the action of the trial court deprived him of his right to a fair trial. In addition, the defendant has failed to satisfy his burden of establishing that his claim is, in fact, a violation of a fundamental constitutional right and therefore cannot satisfy the second *Golding* prong. Id., 240.

Our Supreme Court has held that there exists an exception to the hearsay rule for out-of-court identifications that are reliable and can be tested by cross-examination of the relevant witnesses. *State* v. *Weidenhof,* 205 Conn. 262, 274, 533 A.2d 545 (1987); *State* v. *McClendon,* 199 Conn. 5, 11, 505 A.2d 685 (1986). When the testimony at issue falls within a firmly rooted hearsay exception, and is both reliable and tested by cross-examination, such claim raises an evidentiary and not a constitutional issue and is not entitled to *Golding* review. *State* v. *Bruens,* 18 Conn. App. 459, 461, 557 A.2d 1290, cert. denied, 212 Conn. 804, 561 A.2d 946 (1989).

While the defendant has claimed that the underlying out-of-court identification of the defendant by the victim was unduly suggestive, we have rejected that claim and concluded that it was not in any way improper.[4] Additionally, the defendant was afforded an ample opportunity to cross-examine both the victim and the police officer. Thus, the defendant is not entitled to a review of this claim because he cannot

---

[4] See part I of this opinion.

satisfy *Golding's* second prong because he has failed to demonstrate that his claim alleges the violation of a fundamental constitutional right. "Robing garden variety claims of [an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature." *State* v. *Gross,* 35 Conn. App. 631, 637, 646 A.2d 933, cert. denied, 231 Conn. 932, 649 A.2d 254 (1994), quoting *State* v. *Reddick,* 33 Conn. App. 311, 331–32, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994).

The judgment is affirmed.

In this opinion the other judges concurred.