STATE OF CONNECTICUT *v.* KEVIN SPARKS
(13528)

Dupont, C. J., and Foti and Heiman, Js.

Argued June 5—decision released September 26, 1995

*Carol R. Goldberg*, assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett*, assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's attorney, and *Stephen Sedensky III*, assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[1] On appeal, the

---

[1] General Statutes § 53a-134 (a) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight

defendant claims that the trial court improperly (1) denied his motion to suppress two out-of-court identifications, (2) failed to instruct the jury on an essential element of the offense of robbery in the first degree, and (3) denied his motion for judgment of acquittal on the ground that the evidence was insufficient to support a conviction. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. Early in the evening of March 15, 1993, the victims, Wendy Gerstel and Michael Derryberry, drove to the P. T. Barnum apartments in Bridgeport to purchase drugs. Gerstel was driving Derryberry's car, a red Honda Prelude with a ski rack. As they approached building one, Gerstel parked the car and got out. Gerstel was approached by the defendant and three other black men. The defendant put a gun to her head and demanded money. The defendant kept the gun at Gerstel's head and took approximately $15 from her pocket. Two of the men with the defendant searched her pockets while the third directed them. The third man then told the others to take Derryberry's car.

The four men ran to the car which was still occupied by Derryberry. The defendant went to the passenger side, pointed the gun at Derryberry and told him to get out. When Derryberry exited the car, two of the men searched the inside of the car. Another man then drove the car away. As Derryberry and Gerstel walked away, Derryberry was struck from behind by a blunt object and fell to the ground. When Derryberry looked behind him he saw the defendant and another man.

The victims ran to a gas station to call the police. As they approached the gas station, the victims observed a police cruiser near the intersection of Fairfield Avenue

therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

and Albion Street. They flagged the cruiser down and got into the vehicle. The victims told the police officers what had occurred, and the officers broadcast a description and the license plate number of the vehicle. They then drove around the P. T. Barnum apartment complex looking for the vehicle until they received a radio transmission that the vehicle had been found stuck in a snowbank, and that a suspect had been apprehended after he exited the vehicle.

The suspect, who was the defendant, was identified as one of the perpetrators by both victims while they were sitting in the police cruiser. The victims again identified the defendant as a perpetrator from a photographic array. At trial, the victims both made in-court identifications of the defendant as one of the men who robbed them.

## I

The defendant first asserts that the trial court improperly denied his motion to suppress (1) the identification of the defendant at the P. T. Barnum apartment complex, and (2) the subsequent identification of the defendant from a photographic array.[2] We are unpersuaded.

Certain additional facts are necessary for an understanding of our resolution of this issue. At the hearing on the defendant's motion to suppress, both victims testified to the events surrounding the robbery and to their reporting the robbery to the police. Gerstel testified that her confrontation with the defendant and the

---

[2] The defendant further asserts that the in-court identifications of the defendant by the victims must also be suppressed because they were tainted by the constitutionally impermissible out-of-court identifications. Because we conclude that neither of the out-of-court identifications by the victims was constitutionally impermissible, we need not address this claim. *State* v. *Carswell*, 36 Conn. App. 336, 343, 650 A.2d 924 (1994), cert. denied, 232 Conn. 908, 653 A.2d 195 (1995); *State* v. *Correia*, 33 Conn. App. 457, 465, 636 A.2d 860, cert. denied, 229 Conn. 911, 642 A.2d 1208 (1994).

three men lasted about five minutes, that the men were in very close proximity to her, and that she had no trouble seeing the defendant. In addition, Gerstel testified that her attention was focused on the defendant because he had the gun. Derryberry testified that, although it was dark, the area was well lit and he was able to see the defendant.

Both victims then testified that they had flagged down a police car. Gerstel testified that she told the police what had happened and that the man with the gun was a young, heavyset, black male, wearing a black jacket with orange lettering. Derryberry gave the police a description of his car. Both victims then testified that they rode in the police vehicle looking for Derryberry's car and the suspects. Derryberry testified that he had heard over the police radio that his vehicle had been found.

Both victims further testified that they were brought back to the P. T. Barnum apartment complex less than twenty minutes after the robbery to view a suspect that the police had apprehended after he exited Derryberry's vehicle. The suspect, who was surrounded by three officers, was the defendant. Both victims were asked if the defendant was the person who had assaulted and robbed them. Gerstel testified that she was certain that the defendant was the person who had robbed her and stated that she would remember a person who stuck a gun in her face.[3] Derryberry also identified the defend-

---

[3] In an attempt to establish that the one person show-up was made unduly suggestive by the actions of the police, defense counsel asked Gerstel the following questions and she answered as follows:

"Q. Miss Gerstel, did you believe that the person that the police officers had [stopped] in front of was the person who committed this robbery?

"A. Yes, I did.

"Q. And did you believe that because the police officers stopped there?

"A. No.

"Q. Did you believe that because the police officers had surrounded him?

"A. No.

ant as the man who had been involved in the robbery, stating that he recognized the man's jacket, his figure and the mark on his head. The victims also testified that a second man was also stopped, but that he was released because neither of them could positively identify him as having been involved in the robbery.

Both victims further testified that they went to police headquarters and were separately shown a photographic array consisting of six photographs. Both testified that the police did not direct them toward any photograph, but merely asked them to examine the array for a photograph of the person who had robbed them. Gerstel testified that she told the officer that she thought that photograph number five was of the person who had robbed her. Photograph number five was a photograph of the defendant. Derryberry also identified the defendant's photograph in the array.

The trial court denied the defendant's motion to suppress both out-of-court identifications, determining that neither identification procedure was unnecessarily suggestive.[4] We agree with the determination of the trial court.

"Q. Why did you believe it?

"A. *Because when somebody sticks a gun in your face, you remember that person.*" (Emphasis added.)

[4] The trial court ruled as follows: "Well . . . we have to make the two-pronged test as to whether the identification procedure was unnecessarily suggestive. Insofar as a show-up on the street has been and sometimes classified as suggestive in and of itself, the court cannot deny that that is often the case that it is suggestive. But is it unnecessarily suggestive. I think for all the reasons stated in the reported cases, that the quick identification of a suspect to the determination that someone who is being detained is not the person has been shown to be a valid reason for the on-the-street show-ups. In this particular case in regard to the identification procedure utilized by both the male and female victims in respect to the defendant, considering the reasons for detention, considering the distances, considering the conversations that were had, the requests of the officers, the lack of any suggestiveness on the part of the officers that we have a person in custody for you to look at, allows the court to conclude that this was less than [suggestive] and certainly not unreasonably so if one-on-one on-street

"The due process clause of the fourteenth amendment to the United States constitution requires the exclusion of identification evidence . . . when the identification procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of an irreparable misidentification. . . . *State* v. *Biggs*, 13 Conn. App. 12, 17, 534 A.2d 1217 (1987), cert. denied, 207 Conn. 801, 540 A.2d 73 (1988), citing *Simmons* v. *United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *State* v. *Anderson*, 178 Conn. 287, 291, 422 A.2d 323 (1979); see also *State* v. *Fields*, 31 Conn. App. 312, 320, 624 A.2d 1165, cert. denied, 226 Conn. 916, 628 A.2d 989 (1993)." (Internal quotation marks omitted.) *State* v. *Carswell*, 36 Conn. App. 336, 340–41, 650 A.2d 924 (1994), cert. denied, 232 Conn. 908, 653 A.2d 195 (1995).

"It is well settled that [i]n determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive, and second, if it is found to be so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances." (Internal quotation marks omitted.) Id., 341; see also *State* v. *Gant*, 231 Conn. 43, 70, 646 A.2d 835 (1994), cert. denied, 514 U.S. 1038, 115 S. Ct. 1404, 131 L. Ed. 2d 291 (1995); *State* v. *Monteeth*, 208 Conn. 202, 206, 544 A.2d 1199 (1988).

The burden rests on the defendant who moves to suppress identification evidence to establish that the

confrontation for show-up purposes is deemed to be in and of itself suggestive.

"On the photographic array, it's clear that there isn't any suggestibility demonstrated to the court's satisfaction which would require the court to look at it for totality of the circumstances to determine it is otherwise reasonably done. For the reasons indicated, the court denies the motion to suppress both respects."

identification resulted from the employment of an unconstitutional procedure by the police. *State* v. *Payne*, 219 Conn. 93, 106, 591 A.2d 1246 (1991); *State* v. *Williams*, 203 Conn. 159, 173–74, 523 A.2d 1284 (1987). Our review of the record leads us to conclude that the defendant failed to meet his burden, and that the trial court acted properly in denying the motion to suppress.

### A

We turn first to the identification of the defendant by the victims at the P. T. Barnum apartments. "While a one-on-one confrontation between a victim of a crime and a person whom the police present as a suspect is presumptively suggestive, it does not automatically follow that such a show-up is impermissibly suggestive. . . . Prompt on-the-scene confrontations tend under some circumstances to ensure accurate identifications and the benefit of promptness not only aids reliability but permits a quick release of an innocent party if there is no positive identification, allowing the police to resume the investigation with only a minimum of delay." (Citation omitted; internal quotation marks omitted.) *State* v. *Barnes*, 16 Conn. App. 333, 344, 547 A.2d 584 (1988); see also *State* v. *Collette*, 199 Conn. 308, 310–11, 507 A.2d 99 (1986); *State* v. *Hamele*, 188 Conn. 372, 376–77, 449 A.2d 1020 (1982).

Here, the show-up took place less than twenty minutes after the robbery. The circumstances surrounding the crime were fresh in the victims' minds. The defendant matched the description given to the police by Gerstel and he was seen exiting a car that matched the description given by Derryberry. The victims told the police that four people had been involved in the crime, and it was important for the police to ascertain whether the defendant was one of them. See *State* v. *Barnes*, supra, 16 Conn. App. 344. The delay

that would have been caused by requiring the officers to assemble a lineup would have prevented them from attempting to apprehend the other perpetrators of the crime. We conclude, therefore, that the trial court properly determined that the identification of the defendant at the P. T. Barnum apartments was not unnecessarily suggestive but proper under the circumstances.

Furthermore, there was not a "substantial likelihood of irreparable misidentification" that would render the identification unnecessarily suggestive. *State* v. *Outlaw*, 216 Conn. 492, 501, 582 A.2d 751 (1990). "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." (Internal quotation marks omitted.) *State* v. *Middleton*, 170 Conn. 601, 607, 368 A.2d 66 (1976).

Both victims testified they had a clear view of the person with the gun and they were exposed to him long enough to recall his appearance. According to Gerstel, the person with the gun wore a distinctive jacket and the defendant was wearing such a jacket when he was apprehended. At the time of the on-street identification, both witnesses were certain that the defendant was the person who had held the gun during the robbery. Of great importance too is the fact that when it was suggested to Gersel that her identification of the defendant turned on the fact that the cruiser was stopped in front of the defendant and that he was surrounded by three officers, she replied that she remembered him instead "[b]ecause when somebody sticks a gun in your face, you remember that person." Finally, only twenty minutes had elapsed between the time of the robbery and the identification of the defendant by the victims.

We also note that the victims were shown a second man under circumstances similar to those in which they saw the defendant and, in that case, they were unable to identify that person as having been involved in the robbery and he was immediately released. The defendant has failed to show that the identification at the P. T. Barnum apartments was unnecessarily suggestive.

## B

We turn next to the claim regarding the out-of-court identification of the defendant from the photographic array. "The presentation of an array of several photographs to witnesses, including that of the suspect, does not constitute an impermissibly suggestive pretrial identification procedure in the absence of any unfairness or other impropriety in the conduct of the exhibit." (Internal quotation marks omitted.) *State* v. *White*, 229 Conn. 125, 162, 640 A.2d 572 (1994); see also *State* v. *Carswell*, supra, 36 Conn. App. 342.

Here, the defendant did not introduce evidence of unfairness or other impropriety in the presentation of the photographic array. No evidence was introduced that the photograph of the defendant was different in any meaningful way from the other photographs in the array. Nor did the defendant establish that the police in any way suggested to the victims which person they should identify. See *State* v. *Carswell*, supra, 36 Conn. App. 342. In fact, the photographs were presented to the victims in such a manner that no one stood out from the others. Nothing in the evidence before the trial court would support a finding that the out-of-court photographic identification by either victim was in any way tainted by any form of impermissible suggestion or direction.

The defendant has failed, therefore, to meet his initial burden of establishing that the out-of-court photographic identification resulted from some impermissi-

bly suggestive identification procedure on the part of the police. The trial court properly denied the defendant's motion to suppress both out-of-court identifications.

## II

The defendant next asserts that the trial court failed to charge the jury properly as to an essential element of the crime of robbery in the first degree. In support of this claim, the defendant asserts that the trial court was obligated to define the term "firearm" as set forth in General Statutes § 53a-3 (19).[5] We are not persuaded.

The following facts are necessary for the resolution of this claim. At trial, the victims testified that the gun displayed by the defendant had a chrome colored barrel, a dark handle and an ammunition clip. They each testified that the gun was not a revolver. In its charge to the jury, the trial court defined the offenses of larceny, robbery and robbery in the first and third degree. In defining robbery in the first degree, the trial court informed the jury that the state did not need to prove that the defendant had a weapon or that it was operable, but only that the defendant represented by his words or conduct that he was armed. The trial court did not give the jury the statutory definition of the term "firearm." The defendant took no exception to the trial court's failure to charge the jury as to the definition of a firearm.

The defendant seeks review of this unpreserved claim under the well known rubric of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The record here is adequate to review the alleged claim and the claim is of constitutional magnitude because the defendant asserts that the trial court failed to instruct the jury on

---

[5] General Statutes § 53a-3 (19) provides: " 'Firearm' means any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged."

an essential element of the crime charged.[6] See *State v. Tweedy*, 219 Conn. 489, 510, 594 A.2d 906 (1991); *State v. Williamson*, 206 Conn. 685, 708, 539 A.2d 561 (1988). We conclude, however, that the alleged constitutional violation does not clearly exist and did not clearly deprive the defendant of a fair trial because the existence of an actual firearm is not an essential element of robbery in the first degree.

The essential element of the crime with which the defendant stands convicted is that the state establish beyond a reasonable doubt that the defendant, during the course of the robbery, "displays or threatens the use of what he *represents by his words or conduct to be* a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." (Emphasis added.) General Statutes § 53a-134 (a) (4). This portion of the statute is satisfied when there is proof beyond a reasonable doubt that the defendant represented by his words or conduct that he had a firearm. *State v. Hawthorne*, 175 Conn. 569, 573, 402 A.2d 759 (1978); *State v. Hansen*, 39 Conn. App. 384, 666 A.2d 421 (1995). It is not necessary that the defendant actually have a gun in order to violate this section of the statute. *State v. Dolphin*, 195 Conn. 444, 449, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985); *State v. Hansen*, supra, 401.

The argument advanced by the defendant that the trial court must define the term firearm, therefore, is unpersuasive. Our Supreme Court has held that "[r]obbery is an offense against the person, the distinguishing characteristic of which is the intimidation of the victim. The ability of a defendant actually to do what he has threatened, therefore, is not an essential element of this

---

[6] "The first two conditions [of *Golding*] are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State v. Graham*, 33 Conn. App. 432, 442, 636 A.2d 852, cert. denied, 231 Conn. 906, 640 A.2d 117 (1994).

crime. . . . It borders on the absurd . . . to hold on the one hand that the state need not prove the operability or even the existence of a weapon to obtain a conviction of first degree robbery under General Statutes § 53a-134 (a) (4), yet at the same time to require evidence of the apparent length of the weapon's barrel when the defendant is charged under the identical subsection with having displayed what he represented by his words or conduct to be a pistol or revolver. That the length of the gun's barrel is specified in the statutory definition of pistol or revolver under General Statutes § 53a-3 (18) is no more significant to us here than was the requirement of operability contained in the statutory definition of firearm in [*State* v. *Hawthorne,* supra, 175 Conn. 573]. The essential element of General Statutes § 53a-134 (a) (4) is the representation by a defendant that he has a firearm . . . not the specific identifying characteristics of the weapon alleged in the information." (Citations omitted; internal quotation marks omitted.) *State* v. *Gaines,* 196 Conn. 395, 400–401, 493 A.2d 209 (1985). The state was, therefore, not required to prove that the weapon used met the statutory definition of firearm, nor was the trial court required to inform the jury of that statutory definition.

We thus conclude that the essential element of the crime of robbery in the first degree under § 53a-134 (a) (4) is the display of or the threat of the use of what the perpetrator represents by his words or conduct to be one of the enumerated proscribed weapons. The definition of the word firearm is neither an element of the statute nor relevant to the resolution of the occurrence of the crime.

Thus, we conclude that there was no constitutional violation that deprived the defendant of a fair trial. *State* v. *Golding,* supra, 213 Conn. 239–40.

## III

Finally, the defendant asserts that the trial court improperly denied his motion for judgment of acquittal when the evidence was insufficient to establish beyond a reasonable doubt the identity of the defendant as the perpetrator of the offense. In support of his claim, the defendant points specifically to claimed contradictions in the testimony of the witnesses. We are unpersuaded.

When reviewing sufficiency of the evidence claims, we impose a two part analysis. "We first construe the evidence in the light most favorable to sustaining the verdict. . . . We next determine whether, from that evidence and all the reasonable inferences that flow from the evidence, a trier of fact could reasonably find that the defendant was guilty beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Patterson*, 35 Conn. App. 405, 412–13, 646 A.2d 258 (1994), citing *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993). "In this process of review, the probative force of the evidence is not diminished because it consists, in whole or in part, of evidence that is circumstantial rather than direct." *State* v. *Scales*, 38 Conn. App. 225, 228, 660 A.2d 860 (1995); *State* v. *Salz*, supra, 31; *State* v. *Somerville*, 214 Conn. 378, 390, 572 A.2d 944 (1990). Even in the most serious of criminal cases, proof of the identification of the perpetrator may be proved by circumstantial rather than direct evidence. *State* v. *Rivera*, 32 Conn. App. 193, 201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993).

"The jury's sole province as the trier of fact is to draw all reasonable and logical inferences from the facts as it finds them to exist. *State* v. *Gray*, 221 Conn. 713, 721, 607 A.2d 391, cert. denied, 506 U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992); *State* v. *Hooks*, [30 Conn. App. 232, 239, 619 A.2d 1151, cert. denied, 225

Conn. 915, 623 A.2d 1025 (1993)]. The jury also has the sole and absolute responsibility to weigh conflicting evidence and to determine the credibility of the witnesses. *State* v. *Pinnock*, 220 Conn. 765, 778–79, 601 A.2d 521 (1992); *State* v. *Hooks*, supra [239]. The issue of the identification of the accused as the perpetrator of the crime is peculiarly one of fact to be resolved by the jury. *State* v. *Smith*, 138 Conn. 196, 201, 82 A.2d 816 (1951)." *State* v. *Rivera*, supra, 32 Conn. 201–202. "If evidence, whether direct or circumstantial, should convince a jury beyond a reasonable doubt that an accused is guilty, that is all that is required for a conviction." *State* v. *Smith*, supra, 200.

The test for determining whether the evidence is sufficient to sustain a verdict is thus "whether the [trier of fact] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) *State* v. *Haddad*, 189 Conn. 383, 387, 456 A.2d 316 (1983); *State* v. *Salz*, supra, 226 Conn. 31.

The defendant asserts several factors that he claims diminish the reliability of the identification testimony of the two victims heard by the jury at trial. The fact remains, however, that the victims made three identifications of the defendant as the perpetrator of the robbery—near the scene of the crime, at police headquarters, and in court. The jury had before it all of the allegedly corrupting influences that the defendant claims undermine the efficacy of the identifications. In this context, we rely on "the good sense and judgment of American juries to weigh evidence with some element of untrustworthiness since such evidence is customary grist for the jury mill." (Internal quotation marks omitted.) *State* v. *Rivera*, supra, 32 Conn. 203, quoting

*State* v. *Fullwood*, 193 Conn. 238, 254, 476 A.2d 550 (1984).

"In considering the evidence introduced in a case, [j]uries are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." (Citation omitted; internal quotation marks omitted.) *State* v. *Patterson*, supra, 35 Conn. App. 414.

As we have stated, the issue of whether the defendant perpetrated the crime was properly a question of fact to be resolved by the jury. *State* v. *Rivera*, supra, 32 Conn. App. 201. The jury had before it the unequivocal and certain identification of the defendant made by the two victims within twenty minutes of the crime. The jury had before it the evidence of the photographic identifications by the victims as well as their assertions in court that the defendant was the person with the gun who had committed the robbery. The jury had before it all of the impeachment evidence offered by the defendant in his cross-examination of the victims and of the police officers who were involved in the various identification proceedings. In short, the jury was in a unique position to access the credibility of the witnesses and to make a determination as to whether they believed the victims when they asserted that the defendant was the person who robbed them. Thus, the record more than adequately satisfies us that the evidence was clearly sufficient for the jury to have determined the identification of the defendant as the perpetrator of the crime.

The judgment is affirmed.

In this opinion the other judges concurred.