STATE OF CONNECTICUT *v.* LINDA RICCIO
(14545)

Dupont, C. J., and Foti and Spear, Js.

Argued March 22—officially released June 25, 1996

*Judith F. Machuga*, assistant public defender, for the appellant (defendant).

*Michele Lukban*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Christopher A. Parakilas*, deputy assistant state's attorney, for the appellee (state).

FOTI, J. The defendant, Linda Riccio, appeals from the judgments of conviction, rendered after a jury trial, of breach of the peace in violation of General Statutes § 53a-181 (a) (1), (3) and (5),[1] and nine counts of harassment in the second degree in violation of General Statutes § 53a-183 (a) (3).[2] The defendant claims that the

---

[1] General Statutes § 53a-181 (a) provides in pertinent part: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or . . . (3) threatens to commit any crime against another person or his property; or . . . (5) in a public place, uses abusive or obscene language or makes an obscene gesture . . . ."

[2] General Statutes § 53a-183 (a) provides in pertinent part: "A person is guilty of harassment in the second degree when . . . (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm."

trial court improperly admitted rebuttal testimony. In addition, the defendant claims that the evidence is insufficient to sustain the conviction for harassment in the second degree. We affirm the judgments of conviction.

The jury heard evidence from which the following facts reasonably could have been found. Sometime in 1991, the victim, Robert Baillargeon, who was renovating his house prior to occupying it, hired the defendant's father, Giovanni Fabrizi, to install siding. At that time, the defendant was living with her husband and young daughter a few houses away from the victim's house. During the renovation work, the defendant and the victim met and spoke briefly. After the victim moved into his house, the defendant began calling him on the telephone daily, asking him out on dates. Initially, the victim politely declined and informed the defendant that he was involved in a relationship with another person. The defendant thereafter informed the victim that her only interest was in having a sexual relationship with him. When the defendant's demands became more persistent and she began yelling at the victim over the telephone and then hanging up on him, the victim's refusals became less polite. The parties never dated or engaged in a physical relationship.

On the evening of May 16, 1993, the victim, who owned an Enfield deck hockey rink, and was a member of a team, drove to the rink with his fiancee. As the couple were en route to the rink, the defendant passed them in her car, made an obscene gesture[3] and quickly drove away. Approximately five minutes later, the victim and his fiancee were walking in the parking lot of the rink toward a teammate of the victim who had also just arrived. As they approached him, the defendant drove her car quickly into the parking lot, stopped near

---

[3] The testimony was that the defendant "flipped us the bird."

the couple, and shouted at them, "I'm going to kill you, you're a fucking whore and you're an asshole."

When the victim and his fiancee drove home after the game, the defendant drove her car behind the victim's vehicle and flashed her high-beams on and off. As the victim prepared to make a left turn, the defendant's car passed his on the right and quickly pulled in front of the victim's car, forcing him to brake and turn. It appeared to the victim that the defendant was trying to force his car off the road or into the oncoming traffic. The defendant then sped off.

The victim and his fiancee immediately drove to the Enfield police station and filed a complaint against the defendant. Later that evening, the defendant went to the police station and admitted that she had threatened the victim in the parking lot of the hockey rink. On June 21, 1993, the defendant was arrested on this complaint.

In the spring of 1994, the victim began receiving prank telephone calls on a regular basis at the hockey rink. These calls consisted of heavy breathing, laughing or silence. The victim lodged a complaint with the police because the calls were disrupting his business. Thereafter, a tap was placed on the telephone line from April 19 through May 4, 1994. Nine prank calls were received at the rink during the month of April, all originating from the defendant's father's house. During this period, the defendant resided at that address and had access to the telephone from which the calls originated. At no time was her voice specifically recognized from any of the nine calls. Other adults lived at the address where the calls originated.

I

The defendant claims that the evidence is insufficient to convict her of the nine counts of harassment in the second degree because the state failed to prove identifi-

cation, an essential element of the crime, beyond a reasonable doubt.

"We begin our analysis by restating the principles that guide and define the scope of our review. When called on to review a challenge to the sufficiency of the evidence to support a conviction, we undertake a two part analysis. . . . First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Cintron*, 39 Conn. App. 110, 118, 665 A.2d 95 (1995).

The issue of identification is a question of fact to be resolved by the jury. *State* v. *Rivera*, 32 Conn. App. 193, 202, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993). Proof of the identification of the perpetrator of a crime may be shown by circumstantial rather than direct evidence. *State* v. *Sparks*, 39 Conn. App. 502, 515, 664 A.2d 1185 (1995). The probative force of the evidence is not diminished because it consists, in whole or in part, of evidence that is circumstantial. *State* v. *Somerville*, 214 Conn. 378, 390, 572 A.2d 944 (1990).

In assessing the credibility of the witnesses, the jury had sufficient evidence, albeit circumstantial, to identify the defendant as the person who placed the harassing telephone calls to the victim from her father's telephone. The jury had before it the background of the bizarre, threatening and volatile association between the defendant and the victim. The jury, as the sole judge of the credibility of the witnesses, heard the testimony of the victim, his fiancee and the defendant's father. The defendant's father testified that he did not make the harassing calls and that he had no reason to call the victim during that period of time when the calls

were placed. The evidence tended to show that no adult in the Fabrizi household, other than the defendant, had a reason or a motive, real or imagined, to make those calls. The victim and his fiancee testified to numerous incidents of harassment by the defendant during the previous two to three years, including numerous telephone calls to the victim after he continuously refused her advances. On the basis of this evidence, the jury could reasonably and logically have concluded as it did.

Our review of the defendant's testimony discloses a witness, thirty-two years old, living with her father, blaming her father for the calls, comparing the victim and her father as controlling and hateful, and implying that this was a plot by her father to have her institutionalized. Her testimony was contradictory on many occasions and the jury was well within its rights to discredit some or all of her testimony. As this court has stated, "[i]n considering the evidence . . . juries are not required to leave common sense at the courtroom door . . . nor . . . to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *State* v. *Sparks*, supra, 39 Conn. App. 517; *State* v. *Patterson*, 35 Conn. App. 405, 414, 646 A.2d 258 (1994).

Having carefully reviewed the record, we conclude that the evidence was sufficient to support the defendant's conviction of harassment in the second degree. The defendant's identification was established through circumstantial evidence sufficient to allow the jury to find beyond a reasonable doubt that she was the perpetrator of the crime.

## II

The defendant claims that the trial court improperly allowed rebuttal testimony. The following facts are nec-

essary for the resolution of this claim. During the state's cross-examination of the defendant the following colloquy transpired:

"Q. Didn't you make harassing phone calls to [the victim] in February of 1993 and March of 1993?

"A. No, I didn't.

"Q. Isn't it true that you were the one in both February of 1993 and March of 1993 that made the harassing phone calls to him?

"A. No, because I never made them.

"Q. Isn't it true that you were asked in February of 1993 and March of 1993 to stop making harassing phone calls?"

The trial court sustained the defendant's objection to this line of questioning based on remoteness and prejudice. In response to defense counsel's request that the defendant's answers to the first two questions be stricken, the trial court ordered the second stricken, but allowed the first to remain as part of the record. The prosecutor then withdrew the last question to which the objection had been sustained.

Following the defendant's testimony, the prosecutor sought to introduce the testimony of Officer Thomas Smith of the Enfield police department as rebuttal testimony. The prosecutor intended to impeach the defendant's credibility by contradicting her cross-examination testimony that she had not been warned to stop making harassing telephone calls to the victim in February and March of 1993. The defendant objected on the ground that this was beyond the scope of direct examination, irrelevant and highly prejudicial. The trial court recalled, inaccurately, that when the defendant was

questioned on cross-examination as to whether she had been "warned in February or March of 1993 not to make harassing phone calls to the [victim]," the defendant had testified that she had never made the calls.[4] The trial court then ruled that this testimony implicated the defendant's veracity and allowed the prosecutor to ask two limited questions of Smith. The first question established that Smith was an Enfield police officer in February and March of 1993, and the second query elicited testimony from Smith that he had warned the defendant at that time to stop making harassing telephone calls to the victim.

It is clear that the trial court allowed this testimony as rebuttal evidence. "[R]ebuttal evidence is that which refutes evidence presented by the defense, rather than that which merely bolsters the state's case . . . . [It] is usually confined to testimony which is directed at refuting the evidence given by the defendant . . . or is in general contradiction of the testimony given by the defendant . . . . The admission of rebuttal evidence is ordinarily within the sound discretion of the trial court. . . . Further, every reasonable presumption will be given in favor of upholding the court's ruling when ascertaining if the ruling amounted to an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Cavell*, 34 Conn. App. 276, 281–82, 641 A.2d 426 (1994), aff'd, 235 Conn. 711, 670 A.2d 261 (1996).

---

[4] In point of fact, there was no such cross-examination testimony by the defendant regarding warnings because, as described above, the defendant did not respond to the question of whether she had ever been warned by the police not to make harassing telephone calls to the victim in February and March of 1993. The objection to the question was sustained and the question was withdrawn. No one sought to correct this inaccurate recollection of the trial court, nor was the transcript of the pertinent cross-examination read back.

Although the defendant did testify that she had not made harassing telephone calls to the victim in February or March of 1993, she never answered, nor was asked, since the question was withdrawn after the objection to it was sustained, whether she had ever been warned to stop making those calls. We agree that the rebuttal testimony did not properly contradict the defendant's cross-examination testimony, and that the trial court improperly admitted it.

The determination that the trial court acted improperly does not necessarily require reversal of the judgment. *State* v. *Silveira*, 198 Conn. 454, 475–76, 503 A.2d 599 (1986). Because the improperly admitted evidence does not amount to a constitutional violation, it is the defendant's burden to show that the error was harmful. *State* v. *Cavell*, 235 Conn. 711, 721, 670 A.2d 261 (1996). The defendant's burden is to demonstrate that it is more probable than not that the result of this trial would have been different had this evidence not been admitted. The question is "whether the claimed error would have been likely to affect the result." *State* v. *McClain*, 171 Conn. 293, 300, 370 A.2d 928 (1976).

Given the totality of the evidence, the jury was able to assess the defendant's credibility concerning the improper rebuttal testimony. Smith's testimony was limited, consisting of an answer to only one question that had relevance. The defendant has failed to show that the testimony had a tendency to excite passions, awaken sympathy or influence the judgment of the jury. In short, the defendant has not met her burden to show that the error was harmful.

The judgments are affirmed.

In this opinion the other judges concurred.